# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

ADRIAN ESTRADA,

      Movant,

vs.

UNITED STATES OF AMERICA,

      Respondent.

No. C22-3013-LTS
(Crim. No. CR20-3012-LTS)

**MEMORANDUM
OPINION AND ORDER**

## I.    INTRODUCTION

This matter is before me on Adrian Estrada's motion (Doc. 1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §§ 2255.  Estrada alleges he is entitled to relief based on six claims of ineffective assistance of counsel and one claim of an unconstitutional sentence.  On initial review, I found that these claims should proceed.  Doc. 2.  Pursuant to my order, Estrada's prior counsel filed an affidavit (Doc. 3) in response to Estrada's ineffective assistance of counsel claims.  The Government filed a response (Doc. 6) and Estrada filed a reply (Doc. 7).  I find that an evidentiary hearing is required with regard to one issue.  All other issues are resolved herein.

## II.    BACKGROUND

On May 27, 2020, the grand jury returned an indictment charging Estrada and others with conspiracy to distribute a controlled substance.  Crim Doc. 6.  On April 9, 2021, Estrada pleaded guilty to conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 50 grams or more of actual (pure) methamphetamine in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A) and 846. Crim. Doc. 173. On September 17, 2021, I sentenced Estrada to 180 months' imprisonment and five years of supervised release. Crim. Doc. 215.

### III. LEGAL STANDARD

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service

2

for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition *if a factual dispute exists*." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (emphasis added). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

## IV. DISCUSSION

Estrada asserts six claims of ineffective assistance of counsel and one claim of an unconstitutional sentence. I will address each claim in turn.

### A. *Ineffective Assistance of Counsel Claims*

#### 1. *Applicable Standards*

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255

3

proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Since a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

4

## 2. Specific Claims

### a. Improperly Informing Estrada About Sentence Exposure and Improperly Advising Him to Plead Guilty

Estrada argues that he initially told his attorney that the factual allegations against him were false and he wanted to proceed to trial. However, his attorney persuaded him to enter a guilty plea based on the following:

- Because Estrada was Hispanic and his coconspirators were all white, he would likely lose at trial where his coconspirators would be testifying against him and the jury would likely be comprised of white people
- A guilty verdict at trial meant that Estrada would be looking at a sentence of at least 20 years
- By pleading guilty, he would be looking at about five years in prison rather than 20 years if he risked going to trial

Estrada's attorney denies that he ever made any of these statements to Estrada. Doc. 3. He states that based on Estrada's concerns about race being an issue during trial, he explained the jury selection process to Estrada and noted he could ask potential jurors about any biases they may have toward Hispanics and strike them from the jury.

With regard to a potential sentence, Estrada's attorney denies that he ever told Estrada that he would be able to receive less than a 10-year sentence and that he, in fact, informed Estrada that he had no options to receive a sentence below the 10-year mandatory minimum. *Id.* at 2-3. He states that Estrada's decision to plead guilty was his own and he did not pressure him in any way. *Id.* at 2. He adds that it was his impression that Estrada changed his mind regarding trial after reviewing the evidence in the case, including recordings of one of the cooperating witnesses that captured an inculpatory phone call between the witness and Estrada. The attorney also notes that Estrada acknowledged at the plea hearing that he was subject to a 10-year mandatory

minimum, which was consistent with the attorney's representation that the lowest possible sentence Estrada could receive was 10 years.

The Government relies on Estrada's counsel's affidavit and the transcript from the plea hearing to argue there is no evidence that counsel improperly advised Estrada about his potential sentence. It contends that even if counsel improperly advised him, the court properly informed Estrada of the possible sentence he was facing, including the mandatory minimum and Estrada indicated he understood and chose to plead guilty.

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." *Mayfield v. United States*, 955 F.3d 707, 712 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143-47 (2012)). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Therefore, he must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 57. In the plea context, the movant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quotations omitted).

Whether there is a reasonable probability is a fact-dependent question that requires consideration of any "contemporaneous evidence to substantiate [the] defendant's expressed preferences." *Mayfield*, 955 F.3d at 712 (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (internal quotation marks omitted)). "A defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017). *See also United States v. Miley*, 119 F. App'x 330, 332 (2d Cir. 2005) (concluding any prejudice from any misrepresentations by defense

6

counsel about the consequences of a guilty plea was dispelled by the time the defendant pleaded guilty based on the court's colloquy during the plea hearing); *United States v. Lemaster*, 403 F.3d 215, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.")

I conducted Estrada's plea hearing on April 9, 2021. Estrada confirmed that he understood the charge against him and had all the time he needed to talk with his attorney about the case. Doc. 217 at 2-3. I informed him of his trial rights, including that he had a right to a speedy, public jury trial that would be before 12 people selected from a cross-section of the community who would promise under oath that they would try his case fairly and justly based only on the evidence presented at the trial and the jury instructions given to them. *Id.* at 5. Estrada stated, under oath, that he understood his trial rights and that he was giving them up by pleading guilty. *Id.* at 6-7. He also stated he was satisfied with the help he received from his attorney and admitted to the elements of the offense. *Id.* at 4, 7-9. After finding there was a factual basis for Estrada's guilty plea, I informed him of the statutory penalties stating:

> There is a mandatory minimum sentence of 10 years in prison. The maximum is life in prison. After you serve your sentence, you would be on supervised release for a least 5 years and possibly up to life. There is a $100 mandatory special assessment, and you could also face a fine of up to 10 million dollars.

*Id.* at 10. Estrada confirmed he had no questions about these penalties. *Id.* Later, when discussing the guideline range, I explained:

> It's important for you to know that whatever your guideline range might turn out to be, that doesn't mean that that's where your sentence is going to end up. There are various factors in the sentencing statutes I'll have to look at in addition to the guideline range. Your sentence could be below that guideline range. It could be within the range or above the range.

7

It could be all the way up to the maximum sentence we talked about earlier. There's no presumption that the appropriate sentence in this case is going to fall within the guideline range.

Then again as we discussed a few minutes ago, there is a minimum sentence of 120 months in this case, and that means regardless of what the guideline range might turn out to be, the law will require that I impose at least a sentence of 10 years.

*Id.* at 13-14. Mr. Estrada confirmed he had no questions about how he might be sentenced. He also confirmed no one had forced or pressured him to plead guilty or made any promises to try to get him to plead guilty. *Id.* at 14. Estrada pleaded guilty to Count 1 of the indictment. *Id.* at 16.

Based on Estrada's representations during the plea colloquy, I find that he is unable to demonstrate prejudice from any alleged representations made by his counsel prior to the plea hearing as to his trial rights or the length of his potential sentence. I explained his trial rights and potential sentence to him at the plea hearing and he affirmed that he understood, did not have questions and that no one had forced or pressured him to plead guilty or made any promises to try to get him to plead guilty. This claim of ineffective assistance of counsel fails.

### b. *Failing to Object to Drug Quantity Calculation*

Estrada argues he asked his attorney to object to the following in the presentence investigation report (PSR): (1) drug quantity; (2) a two-level enhancement for possession of a dangerous weapon pursuant to USSG § 2D1.1(b)(1); and (3) a two-level enhancement for use of violence pursuant to USSG § 2D1.1(b)(2). He states that the day before sentencing, his attorney explained that the Government threatened to object to Estrada receiving a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and § 3E1.1(b) if he was going to object to the drug quantity and the enhancements. Estrada states his attorney explained that the objections would likely not make a difference because the Government intended to have coconspirator Cory Schultz

8

and others testify at sentencing about the drug transactions. Ultimately, Estrada agreed to withdraw the objections to drug quantity based on his attorney's advice. He contends his attorney's refusal to follow through with the objections was prejudicial because it resulted in a higher sentence.

Estrada's counsel states that he explained to Estrada that the court could find he had not accepted responsibility if he objected to all relevant conduct. Doc. 3 at 4. He and Estrada eventually agreed to object to the drug quantity calculations in paragraphs 5, 6 and 10 of the PSR. *Id.* In its sentencing memorandum, the Government argued that Estrada may not be deserving of the acceptance of responsibility deduction if Estrada objected to those quantities. *Id.* Counsel explains that he further discussed the objections with Estrada, noting that he thought the better strategy was to focus on objections to the firearm and violence enhancements and, in his experience, objecting to the drug quantities could result in Estrada losing his acceptance of responsibility reduction. *Id.* He also believed the Government's evidence of drug weight through cooperating witnesses would be sufficient to meet the Government's burden. *Id.* at 5. The Government relies on Estrada's counsel's affidavit and argues that this issue is a strategical decision left to counsel and that Estrada has not shown that it fell below an objective standard of reasonableness under the circumstances. Doc. 6 at 10.

Paragraph 5 of the PSR attributes 1,360.8 grams of methamphetamine to Estrada based on Schultz making arrangements with Estrada to obtain methamphetamine on a front. Pursuant to their arrangement, Schultz met with a black male three times at the Webster City truck stop to obtain one-pound quantities of methamphetamine on a front. Crim. Doc. 198 at 4. Paragraph 6 attributes 907.2 grams of methamphetamine to Estrada based on an interaction between Estrada and Schultz in which Estrada instructed Schultz to meet a black male and give him $16,000 in exchange for two pounds (907.2 grams) of methamphetamine. *Id.* at 5. Paragraph 10 attributes 13,857.56 grams of methamphetamine to Estrada based on Schultz receiving one-pound quantities of methamphetamine directly from Estrada each week for a month. Schultz later obtained

9

two pounds every 1.5 to 2 weeks for the next six to seven months. On one occasion, he obtained three pounds of methamphetamine from Estrada because Estrada was going to be away on vacation and unavailable. *Id*. In calculating Estrada's base offense level, probation recommended Estrada be held accountable for his involvement with 37,239.12 kg of converted drug weight.[1] *Id*. at 9. Estrada withdrew all objections to drug quantity the day before sentencing. Crim. Doc. 213.

Estrada argues the Government did not have a reliable basis to ask the court to deny a reduction for acceptance of responsibility in the event Estrada had maintained his objection to drug quantity. I disagree. *See United States v. Reyna Rodriguez*, 810 F. App'x 470, 474-75 (8th Cir. 2020) ("It is not clear error for a district court to deny a reduction for acceptance of responsibility when the defendant denies large amounts of relevant conduct that the district court finds to be well-proven."); USSG § 3E1.1, cmt. n.1(A) ("A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous . . . ."); *United States v. Bell*, 411 F.3d 960, 963 (8th Cir. 2005) (noting that a district court's decision to deny an acceptance of responsibility reduction is reviewed for clear error and the appellate court applies "great deference on review."). The Government was prepared to present testimony from coconspirators Schultz and James Calvert, as well as Agent Young, in support of the PSR's drug quantity determinations if Estrada had not withdrawn his objections. Crim. Doc. 231 at 6. This evidence would have been sufficient to meet the Government's burden even though it would have come primarily from a coconspirator, Schultz. *See United States v. Plancarete-Vazquez*, 450 F.3d 848, 852-53 (8th Cir. 2006) (affirming a drug quantity finding that was supported only by the testimony of a co-

---

[1] The converted drug weight resulted from 16,579.16 grams of methamphetamine and 204.04 grams of ice methamphetamine. *See* Crim. Doc. 198 at 9.

conspirator). If the Government was able to prove drug quantity by a preponderance of the evidence and I found Estrada's denial was either false or frivolous, Estrada could have lost his three-point reduction for acceptance of responsibility, which would have left him at a higher total offense level.[2]

Estrada is not able to demonstrate that his counsel's advice to withdraw the drug quantity objections fell below an objective standard of reasonableness or that there was a reasonable probability that the result would have been different had his counsel maintained the objections to drug quantity in the PSR. Estrada's ineffective assistance of counsel claim on this basis is denied.

### c.    *Failing to Properly Object to Sentencing Enhancements*

Estrada argues his counsel failed to properly object to the two-level enhancements for possession of a dangerous weapon pursuant to USSG § 2D1.1(b)(1) and for use of violence pursuant to USSG § 2D1.1(b)(2). The enhancements were based on an alleged assault at Schultz's apartment that involved Estrada and others kicking in a door and displaying handguns. Doc. 198 at ¶ 7. Estrada argues these enhancements were based solely on Schultz's uncorroborated statements and his attorney did nothing to challenge them. He contends there was a lack of corroborating evidence, such as complaints by neighbors, records of his and Pamperin's alleged hospital visits, or video from Schultz's security cameras. Estrada argues his counsel should have done further investigation to undermine Schultz's statements.

---

[2] If Estrada had maintained his objections, his position was that the true and correct quantity of methamphetamine mixture was 4,304.1 grams. Crim. Doc. 198 at 9. That would have amounted to a converted drug weight of 8,608.2 kg for methamphetamine, plus the 4,080.80 kg converted drug weight for actual (pure) methamphetamine, for a total converted drug weight of 12,689 kg. This would have put him at a base offense level of 34 instead of 36 under USSG § 2D1.1(c)(2), but if he lost his three-level reduction for acceptance of responsibility the total offense level would have been 38, rather than 37.

Estrada's counsel explains that he maintained the objections to the enhancements at sentencing and believes he put on the best defense possible given the weight of the evidence against Estrada and the low burden of proof on the Government. Doc. 3 at 5. He states that prior to sentencing, he reviewed the statements from the cooperating witnesses, medical records from Schultz's and Pamperin's hospital visits[3] and the plea agreements of the cooperating witnesses. *Id.* He believes he sufficiently pointed out the inconsistencies in the witnesses' testimony in cross-examination and in his arguments before the court.

Because counsel objected to the sentencing enhancements, the Government argues that the issue should be limited to whether counsel conducted a sufficient investigation into those enhancements. Doc. 6 at 11. The Government notes that counsel attacked the witnesses' credibility by focusing on inconsistencies in their statements and arguing that, based on a lack of credibility, the Government had not met its burden of proof. *Id.* at 12.

Counsel explored many of Estrada's concerns at sentencing. He addressed the security cameras, which Schultz testified faced the "front" of the apartment and did not capture anything. Crim Doc. 231 at 34. He also asked multiple questions about Schultz's hospital visit. In addition to those issues, counsel pointed out that Schultz was under the influence of methamphetamine at the time of the alleged assault, that Schultz had never met Estrada in person prior to this incident, that he was dishonest with agents about a handgun he had obtained from a coconspirator, and that it seemed odd that Schultz would agree to work with Estrada again after he had purportedly assaulted him. I agreed with the parties that the enhancements depended on Schultz's testimony and his credibility. *Id.* at 67. I analyzed the issue as follows:

> The government has assisted the credibility analysis by providing additional information. The medical records, Exhibits 1 and 2, both are

---

[3] These were admitted as Government Exhibits 1 and 2.

dated January 16 of 2019 and indicate the treatment of injuries consistent with Mr. Schultz's testimony about how himself and Mr. Pamperin were assaulted. Obviously the stories the two individuals told to the hospital staff were not consistent. That is, as we have learned over the years, one of the downsides of being a drug dealer is you can't run to . . . law enforcement if you're robbed or assaulted and tell them the truth. So I'm not shocked that neither Mr. Schultz or Mr. Pamperin would have told staff at the hospital the true story about what happened.

But the fact that both were treated on the same date at different times of day at different facilities but for injuries consistent with Mr. Schultz's testimony about what happened, I do note there was testimony about identifying Mr. Estrada in the photo lineup which is Government Exhibit 3 and then Government Exhibit 4.

This is where I'll talk a bit about weight. I would not be finding that these enhancements were proved if all the government had provided was Mr. Pamperin's grand jury testimony because I do have concerns about giving weight to testimony when the defense hasn't had the opportunity to cross-examine. But if I view Exhibit 4 as supporting evidence and evidence that further corroborates and supports Mr. Schultz's testimony, I do find that it does.

So again, I would not be basing my findings and applying these enhancements if all I had was Exhibit 4. But I do find that Mr. Pamperin's testimony as reflected in Exhibit 4 is quite consistent with Mr. Schultz's including his discussion of mention of the cartels and don't mess with the cartels, the type of injuries and the conduct that's described in Mr. Pamperin's testimony and Exhibit 4 is very consistent with Mr. Schultz.

So this could be a completely different situation if the standard of proof was beyond a reasonable doubt as if this was a criminal trial. For sentencing purposes, I do find the government has established that Mr. Estrada possessed a dangerous weapon, specifically a firearm, on the date of the assault. I do find that the assault occurred on or about January 16 of 2019 as Mr. Schultz described it, that Mr. Estrada was involved along with other people. Mr. Estrada and others did possess a dangerous weapon, specifically firearms. And both on that date and several days prior when Mr. Estrada told Mr. Schultz that he was a dead man, there were at least credible threats of violence, and then actual violence was used on or about January 16 of 2019 as well.

13

So I do find the government has established the two-level increases in paragraphs 16 and 17. The defense objections to those paragraphs are overruled. And that does get the adjusted offense level up to 40 at this point.

*Id.* at 67-70.

Counsel made objections to the possession of firearm and violence sentencing enhancements prior to and at sentencing. He attacked the credibility of the Government's witnesses who were used to prove these enhancements on multiple grounds. While Estrada argues counsel could have done additional investigation to undermine the witnesses' testimony, I do not find that counsel's efforts in objecting to these enhancements fall below an objective standard of reasonableness. As such, I do not find that counsel's representation as to this issue amounted to deficient performance. This claim of ineffective assistance of counsel fails.

### d. Failing to File an Appeal

Estrada argues that after sentencing, he informed his attorney that he wanted to appeal and counsel responded that there were no appealable issues to pursue, particularly because Estrada received a sentence that was below his applicable guideline range.

Counsel states in his affidavit that he had a conversation with Estrada after sentencing and asked if he wanted to appeal his sentence. He recalls that Estrada stated there was no point and he did not want to appeal. Counsel notes that because Estrada's guideline range was 210 to 262 months and he received a sentence of 180 months, there was an extremely low chance that his sentence would be overturned on appeal. He also considered it unlikely that an appellate court would have disturbed the court's credibility findings, which were the basis for applying the enhancements. For those reasons, he did not question Estrada's decision not to appeal.

The Government argues Estrada cannot show prejudice given that he received a below-guidelines sentence and that the court relied on the credibility of Government

witnesses regarding the challenged sentencing enhancements. The Government notes that this type of finding by the court is virtually unchallengeable.

> The failure to file a requested appeal constitutes ineffective assistance of counsel:

> An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required. *Watson v. United States*, 493 F.3d 960, 963–64 (8th Cir. 2007) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Even if the client waived his right to appeal as part of a plea agreement, prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so. *Id.* at 964.

*Sellner*, 773 F.3d at 930. In *Sellner*, the court found that a movant's written statement in support of her § 2255 motion that she had asked her attorney to appeal was not contradictory and contained similar specificity to her trial counsel's affidavit denying that any such request was made. Because "the district court is not permitted to make a credibility determination on the affidavits alone," the court held that an evidentiary hearing was required. *Id.* at 929–30.

This case is like *Sellner* in that Estrada's statements indicate that he asked for an appeal and counsel's affidavit indicates that Estrada did not ask for an appeal. A credibility determination on those statements alone would be improper. *Id.* Admittedly, in light of my findings regarding the other issues raised by Estrada, his prospects on a future appeal are bleak. However, the Supreme Court has provided for such situations in *Anders v. California*, 386 U.S. 738 (1967), and re-affirmed the right to an appeal—no matter how hopeless the appeal may be—in *Garza v. Idaho*, 139 S. Ct. 738 (2019). Estrada is entitled to an evidentiary hearing to determine whether his trial counsel failed to appeal despite a manifest instruction to do so. Ruling will be reserved on this ground for relief.

### e. *Failing to Raise the Issue of Disparity in Sentences of Coconspirators*

Estrada argues he was punished more harshly than his coconspirators despite being named in only Count 1 of the indictment and having no prior criminal history, an exceptional work history and good family ties. Estrada argues that his counsel should have raised this issue at sentencing.

Counsel notes that Estrada never indicated he wanted to pursue the argument of disparity for a further departure or variance but that he reviewed the sentences and circumstances of the other codefendants and did not believe this was a meritorious variance argument. He notes that most, if not all, of the other codefendants obtained lower sentences through cooperation.

The Government notes that Estrada's counsel made a record at sentencing that the Government reached out about potential cooperation but that Estrada declined to pursue a cooperation plea agreement. The Government argues counsel's conduct did not fall outside the range of reasonable professional assistance.

Estrada's coconspirators received the following sentences:

- Schultz – 120 months' imprisonment and a 6-year term of supervised release[4]
- Donavon Lalor – 60 months' imprisonment and an 8-year term of supervised release
- Jimmy Crouch – 136 months' imprisonment and an 8-year term of supervised release
- Calvert – 90 months' imprisonment and 4-year term of supervised release[5]

Schultz and Calvert testified at Estrada's sentencing. Lalor's sentence was based on guilty pleas to Counts 1 and 9 of the Indictment, charging conspiracy to distribute a

---

[4] This was later reduced to 84 months. Crim Doc. 228.

[5] This was later reduced to 67 months. Crim. Doc. 226.

controlled substance (Count 1) and possession with intent to distribute a controlled substance near a protected location (Count 9). Crouch's sentence was based on guilty pleas to Counts 1, 8 and 17 of the indictment, charging conspiracy to distribute a controlled substance (Count 1), possession with intent to distribute a controlled substance near a protected location (Count 8) and distribution of a controlled substance near a protected location (Count 17). Each of Estrada's coconspirators pleaded guilty pursuant to plea agreements with the Government. *See* Crim. Docs. 89, 98, 106, 121. Estrada was the only coconspirator subject to sentencing enhancements. *See* Crim. Docs. 151, 156, 160, 183. His coconspirators were also responsible for lesser drug quantities, with the exception of Schultz. *Id.*

Estrada's counsel argued for a downward variance based on mitigating circumstances such as Estrada's lack of criminal history and his addiction to methamphetamine. Doc. 207. In his argument at sentencing, he also discussed Estrada's family support. Doc. 231 at 78. I acknowledged these, as well as other mitigating factors at sentencing, including his good work history up until 2018. *Id.* at 86-87. However, there were various aggravating factors including the nature of the offense, which involved trafficking almost 37 pounds of methamphetamine in a short amount of time and the circumstances behind the enhancements involving a firearm and threats and use of violence. *Id.* at 85-86. Ultimately, I found that the mitigating factors justified a below-guidelines sentence.

As the Government notes, Estrada was the only coconspirator subject to sentencing enhancements, was held responsible for the highest drug quantity outside of Schultz and did not cooperate. Thus, his higher sentence was not without justification. Moreover, "[t]he statutory direction to avoid unwarranted disparities among defendants, 18 U.S.C. § 3553(a)(6), refers to national disparities, not differences among co-conspirators . . . ." *United States v. Pierre*, 870 F.3d 845, 850 (8th Cir. 2017). Nonetheless, there was no unwarranted sentencing disparity among his coconspirators or among defendants with similar records who have been found guilty of similar conduct. Estrada's counsel made

a strategic choice to focus on other meritorious § 3553(a) factors and counsel cannot be ineffective for failing to make an argument that lacks merit. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). Counsel's performance on this issue did not fall below an objective standard of reasonableness and Estrada has failed to demonstrate any prejudice as a result. This claim of ineffective assistance of counsel fails.

## B.    *Constitutionality of Sentence*

Finally, Estrada challenges the constitutionality of his sentence, arguing that the factual content upon which his conviction rests does not establish, as a matter of law, that he participated in a conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and 50 grams of actual (pure) methamphetamine. He argues the evidence paints a different picture than the one indicated by Schultz's and others' statements.

The Government argues this claim is procedurally defaulted because Estrada did not raise it on direct appeal and has not attempted to establish cause and prejudice or actual innocence to excuse his procedural default. Of course, Estrada is arguing his counsel was ineffective for failing to file an appeal. The Government notes, however, that as part of Estrada's plea hearing, he made admissions to the elements of the offense of conspiracy to distribute methamphetamine in the quantities alleged in the indictment. He also withdrew objections to the quantities provided in the PSR. Finally, the Government argues that the testimony provided at the sentencing establishes an independent factual basis for the conviction.

"[T] factual basis requirement rests in Fed. R. Crim. P. 11[(b)(3)], not the Constitution." *Wabasha v. Solem*, 694 F.2d 155, 157 (8th Cir. 1982). "Establishment of a factual basis may be constitutionally required when the guilty plea is accompanied by claims of innocence." *Id*. A factual basis may be established based on the plea colloquy. *See United States v. Brown*, 331 F.3d 591, 595 (8th Cir. 2003) ("We have held that facts gathered from the prosecutor's summarization of the plea agreement and

the language of the plea agreement itself, a colloquy between the defendant and the district court, and the stipulated facts before the district court are sufficient to find a factual basis for a guilty plea.").

The elements of conspiracy to distribute a controlled substance are: "(1) a conspiracy existed for an illegal purpose; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly joined in it." *United States v. Hamilton*, 837 F.3d 859, 861 (8th Cir. 2016) (quoting *United States v. Alama*, 486 F.3d 1062, 1064 (8th Cir. 2007)). This requires proof that a defendant "knowingly contribute[d] to the furtherance of the conspiracy" which "requires some element of cooperation beyond mere knowledge of the existence of the conspiracy . . . . The government need not prove that the defendant knew all the conspirators or was aware of all the details." *Id.* (quoting *United States v. Askew*, 958 F.2d 806, 810 (8th Cir. 1992)). At the plea hearing, I explained that the Government would be required to prove these elements beyond a reasonable doubt at trial. Doc. 217 at 7-9. Estrada then admitted to the following:

- That between about November of 2018 and continuing to on or about March of 2020 in the Northern District of Iowa and elsewhere, he and at least one or more other people reached an agreement or came to an understanding to distribute methamphetamine.

- That he voluntarily and intentionally joined into the agreement or understanding and that he did so either when it was first formed or at least some later time when it was still in effect.

- That at the time he joined into the agreement or understanding he knew that the purpose of this agreement or understanding was to distribute methamphetamine.

*Id.* Also, for sentencing purposes, Estrada admitted that the offense involved at least 500 grams or more of a mixture or substance that contained a detectable amount of methamphetamine or 50 grams or more of actual pure methamphetamine. *Id.* I found

there was a factual basis for him to plead guilty to Count 1 of the indictment. *Id.* at 10.

In light of Estrada's admissions and the lack of a claim of innocence at the plea hearing, I find no constitutional violation based on a lack of factual basis for Estrada's guilty plea. Estrada is not entitled to relief based on this claim.

## V.     APPOINTMENT OF COUNSEL

There is neither a constitutional nor a statutory right to counsel in § 2255 proceedings; rather, the appointment of counsel is at the discretion of the court. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Green v. United States*, 262 F.3d 715, 718 (8th Cir. 2001) ("the Constitution does not guarantee [movant] a right to counsel in this collateral proceeding"). "The court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1); *see also* 28 U.S.C. § 2255(g). The general rule is that the court may appoint counsel in a § 2255 case if the interests of justice so require. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994); 18 U.S.C. § 3006A(a)(2)(B); 28 U.S.C. § 2255(g). The one exception to the general rule is that if the court grants an evidentiary hearing, appointment of counsel is compulsory. Rule 8(c) of the Rules Governing § 2255 Proceedings; *see also Green*, 262 F.3d at 717–19. As noted above, I find that Estrada is entitled to an evidentiary hearing on the issue of whether he told his counsel to file a notice of appeal. Accordingly, he is entitled to the appointment of counsel.

## VI.     CONCLUSION

For the reasons discussed herein:

1.      All claims raised in Estrada's motion (Doc. 1) under 28 U.S.C. § 2255 are **denied** for the reasons set out above, **except for** Estrada's claim of ineffective assistance of counsel based on his counsel's failure to file a notice of appeal.

2.      I hereby **reserve ruling** on Estrada's claim related to the notice of appeal,

20

as Estrada is entitled to an evidentiary hearing on this claim. As such:

a.      An evidentiary hearing, limited to the notice of appeal claim, will be scheduled by a separate order.

b.      The Clerk's office is directed to appoint an attorney to represent Estrada on this claim.

**IT IS SO ORDERED.**

**DATED** this 9th day of January, 2023.

_____
Leonard T. Strand, Chief Judge